Morning, Your Honors. You may proceed. Thank you. Mr. Fagan. George Fagan for Landmark American Insurance Company, Appalant, and plaintiff in the underlying action. Your Honor, this case, I think, has been fairly well briefed in a sense by both parties, both in the original briefs and the supplementals and I think the issues that are covered. From my point of view, the starting point is the snapshot when Judge Doty granted the motion to stay, April 24, 25. What was going on? We had been litigating the case for four years and almost seven months. Then I think we were 29, around 30 days prior to trial. The parties have been diligently, and I mean diligently, working on pre-trial orders, exhibits, all the stuff we have to do with pre-trial prep. So the snapshot is April 9, motion to stay filed of 2025, and then April 24, rug pulled out in terms of all that work for four years and seven months out the window. All the rulings, including like 23 substantive rulings, two-day trial, narrowing of issues, dismissal of nine of the 12, the claims of nine of the 12 uninsured customers, all out the window. And the reason for that, that Judge Doty assigned, was based on the Colorado River extension. What was ostensibly the extraordinary thing that happened that caused this Colorado River extension to come up at that late stage of the proceedings? The only thing that the other side identified, and I think the trial judge identified, was an interlocutory ruling in the state case that had taken place in February that only concerned Webtronics, which was the lead plaintiff in that case and the only principal plaintiff in that case. That was one of the reasons given. The other reasons given were some kind of inequitable conduct. This is the other factors that Judge Doty, I think, created, and I say that very respectfully, but because they're not accurate. In that the other factors were the decision by landmark years before not to defend Insurance Unlimited or Valerie Mews in connection with the underlying cross-claim or underlying action or anything at all in connection with this lawsuit for the reasons that were extensively briefed to Judge Doty and which he agreed with, with respect to nine of the 12 customers, and held fact issues as to the other that required a trial. So that was one of the reasons. The other reason is that we had filed, I think, three, the original complaint, and I believe three amended complaints. And after, when I went, I know this because this was my decision, when we were preparing for trial, I knew that we'd gotten an entry of default against Valerie Mews in 2021. And we had not done that for the subsequent complaints. So I felt it incumbent upon me to make sure that the case was in position for trial or upon landmark to get the entries of default against Ms. Mews since she had undeniably been served and she had also undeniably not appeared ever. So I believe that those were the two or three reasons that Judge Doty gave that, to me, accounted for the extraordinary ruling that he made where he, instead of applying a heavy thumb for retaining abstention, he applied, he did a sledgehammer. He did a sledgehammer against it. That's what I'm, so the presumption is that you were retaining. Yes. You were ahead. You were ahead, you're not ahead anymore, but that's because there was this long stay between now and then. But you were ahead. You were on the verge of everything. And then, and the case does not involve real property or any of the traditional factors for Colorado River extension. I think the only ones that Judge Doty was referencing were the prospect for piecemeal litigation. But that is all present in any of these parallel proceedings and you don't normally abstain. That alone is not the reason. You don't abstain just because there's piecemeal litigation. Totally agree with that. The other part. I thought you might. The other part was whether there was a, the state was an adequate forum, which I think he treated as neutral. To me, what turned out to be the case was there was a jury trial in federal court and that was not the case in what happened after that. So there was a question, instead of being a neutral fact of the adequacy of state forum, I think it was more in favor of retaining the federal jurisdiction because this was a federal case. There was diversity jurisdiction in the case law as well as status. There is some discretion, though, with the district court in weighing these various factors and deciding these things. What's your best case that we should undo that? The best case that you, why you should do that is five of the six traditional, I'm going to call them the traditional Colorado River factors, weigh in favor of retaining jurisdiction. The one that does not is neutral. Now, Judge. What, do you have a case, though, that would say, therefore, you should reverse the district court? All in one? No. No. But no, just say if all the, if the factors, where the factors are overwhelmingly the other way, you should reverse. I mean, I think, you know, Moses Cone is the one, there's many, we cited decisions that I'm not able to come off the top of my head by this court where it's clear that the factors weigh in favor of, especially in this case, where even by Judge Doty's count, three of them favor retaining jurisdiction. I think what unduly influenced him was this other conduct, the litigation conduct. And I suppose what, I don't suppose, I know what surprised me about that was why do you sit around for four years and seven months or four years and six months when this litigation has been going on and you wait three and a half years after the state court lawsuit was filed to file a motion to stay? And why isn't that litigation conduct that should be looked at? Now, doesn't his order specifically say in weighing the factors and also considering the waiver and estoppel arguments that the inconsistent rulings between the federal court and the state court were a consideration, that the inconsistent ruling wasn't made by the state court until March 11th and that the motion to stay was filed shortly after that. And it was these inconsistent rulings that triggered or prompted the filing of the motion to stay. So he didn't talk about the conduct at that point. He's looking at the fact that something has now happened in the state court that sort of changes the landscape because we've got inconsistent rulings between the two courts. Well, I would say this on that. That's what he said. You're right, Judge Romeros. That's what Judge Doty said in his opinion. And the fact of the matter is, is that the opinions that the March, or excuse me, I think the decisions were March of 2025 is the ones you're talking about, March 11th, I think. And then there was, their motion was filed April 9th. So roughly a month apart. But the troubling aspect to me in the why is waiver and stop a month a consideration and why is it the other side's conduct at issue is Judge Doty's rulings that dismiss 9 of the 12 plaintiffs dated from May and July 2022. First 8 in May of 22 and then July of 22. He made rulings, dispositive rulings, so they're out. And we only have three left. And so we're looking three years down the line. And the other part of this is the state court ruling, such as it was, is a fuzzy, at best, ruling. And if it's carefully read, it was only filed in connection with the Webtronics case. Only the Webtronics lawsuit. But wasn't it about the identical exclusion policy at issue in the federal case? It was one of the exclusions at issue in the case, yes. That's true. And some of the parties, the homeowners who didn't, or the parties that didn't have coverage, some of them came out because of settlements. Every one of them came out. All the claimants settled by July of 22. All the uninsured customers had settled by July of 22. But I think the point with the March ruling is the motion was filed for a different policy. And it did have the same exclusion, but it's a different policy, and it's for a different claim by a different plaintiff. And the judge's ruling from March, if you look at it carefully, it's only with respect to the allegations and the pleadings. Was the language in both exclusion paragraphs identical? Yes. But that opinion in the state court has no bearing whatsoever on what the district, except if the court wants to consider it as persuasive analysis. I just taught this in my fed courts class. A single state court decision that does not affect the parties in the case doesn't implicate the federal court case that's ongoing. It might be some persuasive analysis, but it's not binding. It doesn't cause a federalism concern. It's no disrespect. Some of us have been single state court judges in our prior lives. It doesn't cause a problem, though, just that the court may think differently about state law. Now, if it was a Supreme Court decision about the policy interpretation, then, whoa, the federal court needs to stop and heed that. But just because if it's not the same parties, you don't even have the issue of the abstention. I'm sorry. Maybe that's a very friendly question. What would you like to do with it? I took it as a rhetorical one. So I don't know that it's anything I can say other than that, yes, Your Honor, these were totally different circumstances, and it is a district court. It's not a showstopper circumstance. Even if this were a court of appeal ruling, it would still only be suspect to or be accorded a potentially persuasive. It's not a decision by the Louisiana Supreme Court. So I don't understand what, if that's the thing that occurred, why that was so revolutionary that would justify abstention. Your Honor, I will confess that the reasons why Judge Doty granted his motion, I know what he said in the rulings, and I know what he said in the statements, but they just don't make a lot of sense to me when you look at it from the point of view of the Colorado abstention. But what can be done now? Is the horse so far out of the barn that there's nothing that can be done at this stage? No, I don't think so. You're asking me what kind of relief are we looking for, I think. Yes. Okay. And, A, vacate and reverse, because there is a live controversy between the And so if you reverse and remand, reverse vacate and remand, what should it say? It should say, Judge Doty, you erred by granting abstention. You are directed to proceed with the case. And I can tell you that now, having the benefit of 20-20 hindsight, I will file 54B motions to certify those nine dismissals, try at least to get that done. And this case was on the eve of trial. We were literally ready to try the rest of the cases before adjourning. But I hate to say this, but couldn't they immediately file a new request for abstention if that case is so much farther down now? They couldn't. But I think that that's a first-time issue before this Court, which the Court typically does not address itself. I know that it's an issue. I know that it's a possibility. But that's really something that came up after the fact was out of my control. And I'm not foreshadowing what we're going to do by any means. I have no power to do that. I know. But I think that that's why I tried to focus at the beginning on what is the snapshot of where it started, what was the context when the remand order was made, is that we were on the eve. We were on the doorstep. We were at trial. And that is what set it aside. In fact, you have rulings for a number of plaintiffs. Yes. Well, we have in the federal court case? Yes. Yeah, the nine of the 12 claims that relate to nine of the 12 customers were dismissed. And so you just need to button those up. Button those up. We've got one more case that's an exclusion case, only one more claimant, and the others are different. They're more of a myriad of issues. Now, the district court could reopen and look at that persuasive authority. They could look at the persuasive authority. They could. There's no reason that the judge can't look at the other issues. We now have other evidence because of the other trial, too. Thank you. Thank you, Your Honor. I think I have five minutes reserved. Yes. Mr. Moore. Good morning, Your Honors, and may it please the court. Jonathan Moore on behalf of the appellee in this matter, Insurance Unlimited of Louisiana LLC. I'd like to first touch upon something that has not been addressed yet by this court, but the question raised by this court in supplemental briefing that was done by our side, which is, what is the impact of this case on the state of Louisiana? What is the impact of the state court judgment to this appeal? And the answer to that lies in this court's ruling in the fidelity standard case that we cited in our supplemental brief that stated as follows. A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal. Now, this decision was then carried forward by this court and cited approvingly in, first, the Energy Development v. St. Martin decision, also cited in our supplemental brief, and then later in the Comer v. Murphy Oil USA decision, also cited in our supplemental brief. There's also several district court cases that have cited the fidelity standard approvingly for this same proposition. This was a holding of this court, and Chief Judge Elrod, I'll note in your prior oral argument, you discussed at length the principle of orderliness. I think that that certainly would apply in this situation here. The fidelity standard case is something that is a holding and pronouncement that is specific to this same issue here, which is we have a state court judgment, albeit pending appeal, but that state court judgment should be given res judicata effect. What does the state court judgment say and who is it applied to? The state court judgment is in favor of insurance unlimited, and it disposes of all the claims and all of the issues in the case and would dispose of all of the issues and all of the claims in the federal court proceeding as well. Your Honor, we did attach for your consideration to the supplemental. Well, actually, prior to the supplemental brief, we provided notice in accordance with the local rules of the state court judgment, and we did provide a copy of that judgment for the court's consideration. That's ultimately what led to the supplemental briefing where the court asked us to address the mootness issue or the impact of that state court judgment here today. What is the status of the appeal on that? Currently, Landmark has posted a bond. However, Landmark has not paid the appeal cost. They are $95,000 due to the amount of filings that Landmark provided to the state court, largely federal court filings. Landmark is contesting the amount, claiming it's $75,000. That issue has not been resolved, but they will have to pay those costs for them to continue with their appeal. So that is the current status of the state court judgment. Was it correct for the district court to have abstained when the district court had already resolved so many of the claims? Well, I don't think actually the district court has resolved as many of the claims as Landmark counsel would suggest. Your Honor, the underlying principles here are not the individual claims so much as the larger issues of what exclusion O applies to. That's the central issue here. That is the central issue that relates to all of these customer claims. So are you saying that those particular plaintiff's claims had not just needed to be separated out so that they could get a final judgment on them? They didn't need to be separated out. Well, yes, in order for a final judgment and those to be separate so that those could be over. Yes, relative to the settlements that were confected, Insurance Unlimited paid those settlements. Insurance Unlimited, however, maintains their claim against Landmark under the Landmark policy. That's what this case is about. That is always what this case has been about. There's a lot of discussion about the Webtronics claim here, and I think it's important and I think it touches upon, Chief Judge Elrod, your statement about piecemeal litigation. And so the problem here is not that there was duplicate lawsuits. This Court's been clear since the Black Sea decision that that is not the consideration for the third factor under Colorado River. The fear here and the problem was inconsistent rulings, but not just inconsistent rulings, inconsistent rulings as it applied to a party in the state court decision, Webtronics, that was not a party to the federal court case. That was the problem. What's the problem with that? The problem with that is it has the- If they're not a party, there's no privity there such that it matters. The state court can hold one thing about this policy and the federal court can hold something else about different people and different things. Well, I think Judge Ramirez touched upon this, but it's the issue of it's the same claim, the same policy. The same effect as to Webtronics of that court's interpretation of the policy and the policy exclusion would apply equally to every other claimant or every other customer. But neither one are bounding on anybody. So the policy percolates. People are percolating about-courts are percolating about the policy language until it gets up to the Supreme Court, and that's how insurance policy litigation percolates. Certainly, Your Honor, but this is a factor of the Colorado River extension doctrine. This is the third factor of piecemeal litigation. Certainly, this case doesn't involve arrests. However- But it's not involving the same parties, and so it doesn't apply. Well, it does apply here. The cases are parallel. Respectfully, Your Honor, the cases are parallel based on how this court views the term parallel. So let's look at that a little bit. If the central inquiry for parallel is does the state proceeding resolve all of the questions of the federal court proceeding? The answer to that unequivocally is yes. The counter to that was not true. A resolution of the federal court proceeding would not have resolved all of the issues in the state court proceeding. Why? Because we do have one particular claimant, Webtronics, that was not a party to the federal court proceeding. And so you have that situation where it simply is substantially similar, substantially same, and it is substantially similar, substantially same, such that the cases are parallel. Did Landmark move to stay the state court litigation, arguing in part that it was substantially the same as the federal court litigation? That's correct, Your Honor. They did, and I did brief that in there. And I want to add something, and I think it's important here. They did. They did. They did. They did. And obviously, Webtronics wasn't agreed to a stay because they weren't a party to the federal court proceeding. So they don't have to, I mean, why can't they both proceed? And what's the harm of that? Why shouldn't that have been what happened? Well, I think here the reason that shouldn't have happened because the court was concerned for piecemeal litigation as it relates to inconsistent rulings related to different people under the same policy, and how that ruling relative to any of those claimants in the state court would impact and be different as this federal court case continued to move along. That was just one of the court's considerations, and that's what triggered this, as Judge Ramirez noted earlier. And I think that was the trigger, but that wasn't the only factor that the court considered. I'll remind the court, it's a de novo review of the actual factors. So how Judge Doty weighed and looked at those factors ultimately is something that this court can do de novo. Now, subject to an abuse of discretion relative to Judge Doty's ultimate ruling, which was staying in this case. So what happens if, assuming arguendo, we were to think that it was wrong? Is the horse too far out of the barn at this point? That was maybe your first point that you were raising. Well, I think it does. I think it comes back to my first point, which is I believe that the case is res judicata, and I think that it is. And if this court looks at the Fidelity Standard case, if it looks at the Energy Development v. St. Martin decision, and the Comer v. Murphy Oil USA decisions, I think the court will come to the same conclusion, and we'll have to find that this case is res judicata, even if the state court judgment is subject to the appeal. Your Honor, I also want to— Should we wait? I think that it would be reasonable and well-measured to stay this court's hand right now, as we saw, as we see how this state court judgment— Should we wait to see if the state court judgment is upheld before we rule on whether or not to undo it all? I think that would be prudent, and I think that ultimately Colorado River is a pragmatic doctrine. I mean, that's what the underlying basis of this abstention doctrine is. I'd take it back to what did the Supreme Court say in Colorado River? Now, it was involving arrests. It was involving four factors that the court discussed. But what did the court then do in Moses Cone? It didn't involve arrests. It was a Federal Arbitration Act issue. They discussed two additional factors. The factors are not exhaustive. That's black letter at this point.  And I was going to actually note that. It is black letter. There are guiding principles in every decision that have these black letter principles, and then in nearly every decision, what does the court seem to go through? A mechanical checklist. And what does everybody say? Don't do a mechanical checklist. Don't weigh the factors the same necessarily. Let's look at this on a case-by-case basis. So I kind of laugh every time I read a decision because they go through the boilerplate, they tell us the guiding principles, and then it is a check the box of six factors. Now, Landmarks Council said that that was incorrect. Judge Doty shouldn't have done that. I stand that Judge Doty did exactly what those guiding principles say every court should do in discussing abstention, which is don't simply look at the facts based on a static rubric of six factors. Look at the case. Look at everything that's happened here and consider those issues. And so I would suggest to the court that they do that here. Don't look at this as a kind of formulaic check the box. Let's look at it as what happened here. And I think it's important to note how we did get here. This was something where Hurricane Delta made landfall August 27th, 2020. We learn, Insurance Unlimited learns about the issues involving failure to bind coverage of various customers as a result of the storm. I think it was September 1st. September 2nd, fires misused, followed by immediately contacting Landmark to say, hey, we have an issue here. We need help. We need coverage. We have some issues with all of these individuals. And what did they do? They turned around and they denied coverage and they denied everything and their duty to defend in that case. And then three weeks later, and I think Judge Doty said before the water had dried up, and this was true, you know, people are still on generator power. He filed an interpleaded lawsuit against not just Insurance Unlimited, not just Valerie Mews, but named all of the individual customer defendants in that case who just had their properties destroyed, who in turn turned around and filed a class action against Insurance Unlimited and their own individual complaints about Insurance Unlimited. So Insurance Unlimited was immediately compelled by way of a compulsory counterclaim that would have otherwise been waived by this Court's precedent if they did not bring a claim as well against Landmark to address those issues. So when we think about the time of, you know, how we got here, I think we need to consider also how we started. What's wrong with that? I mean, I'm sorry. There's nothing wrong with it. Is there something offensive about that, wrong with that? I mean, what's your point? So it's a consideration, I think, on the fourth factor. A consideration of what? What are we supposed to take from that? The fourth factor of Colorado River. It is not the first to file, it's the progress of the lawsuit. And I want to have the Court kind of recognize and frame the issues appropriately, which is, you know, there was this... There was still water, people were still suffering, the lawsuits were filed. What is the point? How does that factor in the considerations? I don't understand. Are you saying there's something wrong with doing that? Landmark has suggested that because they filed first, that basically the first to file rule under section... We normally have that rule. That rule does not... We have complete diversity, and we have first to file. So normally they should have won. First to file is not the factor to consider on the fourth factor. It's the progress of the... But, no, I mean, that should have won in terms of venue in general. In general, that's a very recognized venue principle. Well, and then let's look back, though. Insurance Unlimited didn't start the state court lawsuit either. They were sued as well in that court. So we have two situations where they were sued originally by other people. Insurance Unlimited did not. They were trying to actually, leading up to the filing by Landmark in federal court, Insurance Unlimited out-of-pocket work was paying to rebuild these people's homes and businesses. And that was all put to a stop because of what Landmark did by suing them and causing all of the claimants to then file cross-claims and counter-claims. I'm sorry. Are you saying that that was somehow untoward? Is that what you're trying to say? I would say that it was... What is untoward about that? I would say that it was certainly procedurally much different than how you would normally see these situations. And I think the procedure here and the background here is important to understanding where we are now. I don't know. It seems like you're trying to say they're a bad guy. Well, I mean, I'm not saying they're a bad guy because they went out three weeks later after Hurricane Laura to file lawsuits in federal court. But I think it shows forum shopping on their part. So why don't they get to forum shop? Forum shopping is not... It's a feature, not a bug. Correct. But the fourth factor says that you're not supposed to reward parties for forum shopping. They're not trying to encourage parties to go out and be the first to file. That is not the point of that factor. And so I think that the court should take us back and... But we do reward people for forum shopping. We reward them with... And we do reward them under our system. Under our system. And for first to file. We do do that. That's a major venue factor. I think that's a venue factor generally. I don't believe that it should be a factor here because specifically under Colorado River, all cases say the first to file rule is not the standard. That is not the standard here. And so the suggestion by Landmark that because they went and filed first and they proceeded at a certain pace in that federal court, they therefore should be given some kind of favorable treatment under the fourth factor or under the Colorado River. You're saying Moses-Cohen says it's about the progress. You have to balance both factors. Well, actually Colorado River and Moses-Cohen. Moses-Cohen added the fifth and sixth factors that talk more about the accuracy of the state court being able to... And if it was a state law issue only. I think not only is it a state law issue only as for the fifth factor, but we have a state court judgment. In rare circumstances, that fifth factor can favor abstention. And I think it does so here. And we brief that specifically in our briefs and in our supplemental briefs. Parties form shop because that's what zealous advocates do and judges follow law. Generally speaking, I think so. I don't think that should be given any considerable weight here is my point, Your Honor. I think here when you're considering the factors, that type of issue is not something that should move the needle in the court's analysis of the factors. I do want to go back to a little bit. In page 28 of our brief, we referenced various summary judgment filings that were made by landmark in the federal court proceeding, excuse me, in the state court proceeding. And I do reference those, but they don't make part of the record. I do have copies here. But I wanted to point out that... You're saying page 28 of your brief? In page 28 of our brief, we identify in considering the factors, eight summary judgments, eight motions for partial summary judgment that were filed by landmark in the state court proceeding. So this was after the stay had been issued by the federal court and after the reconsidered ruling, which was earlier in July of 2025. What is the point of that? The point of that is in those filings, in the first page of their memorandums in support of seven of those eight summary judgments, landmark said, and I quote, I'm sorry, I haven't heard the point yet. The point is they were acknowledging after the stay that these cases are parallel. And I think that's important to the court's consideration here is that... How would you describe it at that point? How would I describe it? Well, landmark is taking the position the cases are parallel. Well, they're not 100% parallel because they don't involve the same parties across the board, but they, okay, I don't know that that's a big gotcha moment. I don't mean it for a gotcha moment. If the court had any concerns over the fact of whether the cases are parallel or not, I think that helps supply a little bit of indication that not only do we, Insurance Unlimited, believe that the cases are parallel, but landmark agrees with that position as well. So I think that this case largely turns on the issue of exceptional circumstances to the extent the case is not dismissed for res judicata purposes. But I also think that I would be upset if I didn't acknowledge that... I think that the issue of parallel law I think is favorable to us. I did not want to ignore that issue here today. Your Honors, I think one of the last points that we were briefed and really hasn't come up so much other than some discussion with Judge Ramirez talking about the trigger is the issue of waiver or judicial estoppel. Now, Your Honors, notwithstanding when this issue was triggered and became, I think, ripe for abstention, there's no cases that I've ever found that a party waives abstention, similar to what landmark is suggesting here. Any case that has discussed waiver in this context has done so when parties have failed to brief an issue, failed to raise it, and would try to raise it for the first time on appeal. And so I don't think that that has any authority, nor does landmark cite to any authority for that proposition in their brief. And so I do think that's important for the court to... Had y'all raised it early on with Judge Doty that he should have waited for the state court, or was it only after... It was about 30 days after the state court... So y'all never hinted or said, well, maybe we might talk about whether we should wait or... The issue, to my knowledge, did not come up specifically, and I think the issue wasn't triggered until, as Judge Ramirez noted and as we noted, we had inconsistent rulings with a different party under the same policy and the same exclusion, and the concern for what that would do as to the other claimants who were having arguments. And we were having arguments as to coverage for those claims under the same policy exclusion, the same issues. And so that ruling was going to be dispositive of the issues. It just so happened that the rulings did not align. And the court, I think, was pragmatic in staying its hand at that point for concerns over further rulings as it related to further of the claims were going to be wildly different. And that was simply one factor that the court determined and thought about in connection with the Colorado River factors. You know, I see that my time has ended. Unless you have any other questions, I've exceeded my time. Thank you. Thank you very much. We appreciate your argument. Mr. Fagan, should we wait for the Court of Appeals in the State Court? No, Your Honor, respectfully, because I think there is work that Judge Doty can do that I alluded to before that could move this case along. The biggest unknown is if you wait, okay, there is no predicting what the Third Circuit Court of Appeals is going to do when they do it and what they're going to say. We certainly are going to vigorously appeal that. They could come out in our favor. They could come out in their favor. It's just unknown right now. How does the State Appellate Court's ruling on the meaning or applicability of Exclusion O impact these individual defendants that have already been dismissed out of the federal litigation? You mean if there is a ruling that agrees, that affirms, then it's persuasive. It's not going to be determinative or something that a federal court is eerie down to follow unless the Louisiana Supreme Court pronounces on that in terms of Exclusion O. I guess what I'm asking, I understood that the individual defendants settled with UI and now UI is essentially seeking indemnity for those settlements and that the interpretation of Exclusion O will impact UI's claims for indemnity. And I'm asking how any ruling regarding Exclusion O is going to impact the individual defendants that have been dismissed out because they settled with UI. They won't affect the individual defendants because I refer to IU's claims as being tort-based subrogation claims because they stand in the shoes of the people that they pay basically. So to me, that's a tort-based subrogation claim. So they walk in the same shoes that the uninsured customers walked in. So that's why the insurance unlimited is basically in the case in that regard as an extension of those customers. It's not going to affect them. They're not going to have to pay their money back. And just as an aside, to my what insurance unlimited is trying to get recovery from landmark for is a business decision they made because they had a renegade employee who did bad things to their business. And they had a big PR problem so they go out and pay everybody. I don't think it had anything to do with the landmark policy. They just felt it was the right thing. And they did that. Now, that's a different question than whether that's covered under insurance. That's why we filed the DEC action because we were made well aware of the conduct of Valerie Mews early on. They candidly admitted, I think, to eight or nine of the customers having their money stolen by her. So the repercussions are not going to go to the customers, if that's your concern, because they've already been paid. We haven't sued them. In fact, we dismissed them once we found out about those settlements. Landmark dismissed those claims. I guess that was my question because you wanted to go back into the district court to address those or to get final judgments against those individuals. And so I was wondering what the impact was. I may have misstated. What we wanted to do was get final judgments that the insurance unlimited subrogated or whatever you want to call them, indemnity claims are barred by exclusion O, as Judge Doty has held with respect to nine of the 12 customers. And one, that's a fact witness. And then two, exclusion O is not the principal issue. It's only 10 of the 12. And nine of those have been addressed. And so that's why we were at the cusp. If I had had the foresight, I would have, could have, should have filed a motion, a 54B motion on those nine, but I didn't. Now, the other thing, I don't know if you want me to touch on race judicata or not, but respectfully, the Fifth Circuit's decision from 1975 and fidelity standard, the law in Louisiana has changed. Race judicata has changed. And that case dealt with a, they were trying to, there was a decision in the Louisiana court about personal jurisdiction that they were trying to collaterally attack in Georgia's court that they were trying to enforce the judgment in Louisiana. And they said, no, you can't do that. Now, that's all. We have cited it again. Pardon me? We have cited that case. I know you've cited it again, but the Louisiana Supreme Court in Avenue Plaza versus Falgu has very clearly stated that it's all the way through the appellate process before there's a final judgment. And as the code articles. And this is the important part of the race judicata statute itself, which is 9.4231. At the very beginning, it says this phrase, except as otherwise provided by law. And it talks about potential finality in the event of a final judgment being entered. And then you see. Should we certify that? Pardon? Should we certify that question, whether that's the law in Louisiana or not? Well, Avenue Plaza is a Louisiana Supreme Court case. Right. But should we certify some issue about whether or not we're bound by that prior decision that we've had? Oh, you mean the fidelity? You know, it's a fidelity issue. I don't know. I'm not aware, and I looked at the Louisiana court case. Does it matter what they think about it? Okay. No, I'm asking, does it matter what they would say? I think they've already said it, and they've already spoken it, and there's at least 20 Louisiana appellate decisions that have followed Avenue Plaza in the same fashion. It's not a final and definitive judgment until all the appeal process is done. And that's just been a, I hate to say it's a bright-line rule, but it's a bright-line statement, that perhaps 20 appellate decisions in every circuit except, I think, the State Fifth Circuit. So four out of five of the Louisiana appellate courts have all followed Avenue Plaza to that effect, which is, and I'm out of time. I don't know if you wanted to finish that statement or not. Go ahead and finish, but we're going to wrap it up. Yeah, I am. I mean, Avenue Plaza said, quote, a final judgment from which there can be no appeal acquires authority of the thing adjudged. That's what the Louisiana Supreme Court says. That thing adjudged is a final judgment that has raised you to codify. Thank you, Your Honor. Okay, thank you. We have your arguments, and we appreciate them, and the case is submitted.